1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                     ---

4

5   THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

6

7   YOUNGBLOOD TIME PIECES, INC.,  )
                                   )
8          Plaintiffs,             )
                                   )
9     vs.                          )   No. CV 11-8175-SVW
                                   )
10  FOSSIL, INC., et al.,          )
                                   )
11                                 )
           Defendants.             )
12  _____)

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              LOS ANGELES, CALIFORNIA

17              MONDAY, JUNE 11, 2012

18

19

20              PRETRIAL CONFERENCE

21

22  _____

23          DEBORAH K. GACKLE, CSR, RPR
                United States Courthouse
24       312 North Spring Street, Room 402A
             Los Angeles, California 90012
25                  (213) 620-1149

1    **APPEARANCES OF COUNSEL:**

2

3

4        **For the Plaintiff:**

5

6

7               Jodie Slater Hastings
               Strong and Nolan LLP
               1701 North Market Street Suite 200
8              Dallas, TX 75202
               214-635-5643.
9              Fax: 214-752-6929
               Email: jodie@strongnolan.com
10

11

12              Christopher S Hamilton
               Standly and Hamilton LLP
13              325 North St Paul Street Suite 3300
               Dallas, TX 75201
14              214-234-7900
               Fax: 214-234-7300
15              Email: chamilton@standlyhamilton.com

16

17              John Tehranian
               One LLP
18              West Tower
               4000 MacArthur Boulevard Suite 1100
19              Newport Beach, CA 92660
               949-502-2870
20              Fax: 949-258-5081
               Email: jtehranian@onellp.com

21

22    ///

23    ///

24

25

                  UNITED STATES DISTRICT COURT, CENTRAL DISTRICT
                   COURT REPORTER DEBORAH K. GACKLE

1      **For the Defendants:**

2

3            Marcellus A McRae
             Jason Lo
4            Gibson Dunn & Crutcher
             333 South Grand Avenue, 45th Floor
5            Los Angeles, CA 90071-3197
             213-229-7675
6            Email: mmcrae@gibsondunn.com

7

8            Larry W McFarland
             Anthony M Keats
9            Keats McFarland & Wilson
             9720 Wilshire Blvd, Ste PH
10           Beverly Hills, CA 90212
             310-248-3830
11           Email: lmcfarland@kmwlaw.com

12

13

14                              - - - - -

15

16

17

18

19

20

21

22

23

24

25

1     **LOS ANGELES, CALIFORNIA; MONDAY, JUNE 11, 2012; 3:20 P.M.**

2                              --oOo--

3

4          THE CLERK:  Item 17, CV 11-8175-SVW, Youngblood Time

5     Pieces, Incorporated versus Fossil, Inc.

6          Counsel, please state your appearance.

7          MR. McRAE:  Good afternoon, Your Honor.  Marcellus

8     McRae, Gibson, Dunn and Crutcher, appearing on behalf of

9     defendants.  I'm here with my partner Jason Lo.

10         MR. McFARLAND:  Good morning, Your Honor.  Larry

11    McFarland, with Keats, McFarland and Wilson.  I'm hear with

12    Tony Keats, also with Keats, McFarland.

13         MR. HAMILTON:  Good afternoon, Your Honor.  Chris

14    Hamilton for the plaintiff, Youngblood Time Pieces, Inc.

15         MS. HASTINGS:  Good afternoon, Your Honor.  Jodie

16    Slater Hastings on behalf of the plaintiff, Youngblood Time

17    Pieces, Inc.

18         MR. TEHRANIAN:  Good afternoon, Your Honor.  John

19    Tehranian on behalf of plaintiff Youngblood Time Pieces, Inc.

20         THE COURT:  This is a pretrial conference, but it's

21    somewhat -- you may be seated -- somewhat awkwardly positioned

22    because there is a summary judgment motion on calendar next

23    week; and I would have ordinarily, perhaps, heard the summary

24    motion at the pretrial conference, but I wanted to sort of use

25    this time briefly to sort of get a cut at what's before me.  In

1  other words, get some sort of preview or some general sense of

2  what's at issue.  Now, I'm going to perhaps get you to a point

3  and then invite further discussion.

4         Generally -- this is what I understand about the

5  case -- the plaintiff claims to have developed or created a

6  wristwatch that has some design qualities.  Plaintiff didn't

7  sell a tremendous number of these wristwatches, and the

8  defendant is a substantial company that sold wristwatches to,

9  among other places, Macy's, the department store.  And I don't

10 believe there's an allegation that the defendant's wristwatches

11 would be confusingly similar to the plaintiff's in appearance,

12 and I don't believe that the defendant markets its wristwatch

13 to the consumer in the same way the plaintiff does, but I do

14 understand that the plaintiff's case, in part, is that when the

15 defendant dealt with Macy's and the defendant referred to its

16 watches, that is, Fossil referred to its watches with the

17 designation in some parts as "Youngblood," and I think

18 defendant maintains that it never sold the watch to the

19 consumer as "Youngblood" or advertised it or had "Youngblood"

20 imprinted on it; but I also understand the plaintiff to

21 maintain that if you went on a certain Internet site, that you

22 would see the defendant's watch designated with the name

23 "Youngblood," and the idea, I guess, is that if someone went on

24 a -- I don't know which site it was -- to look for

25 wristwatches, the names would be confusing to the consumer.

1    The motion for summary judgment -- I understand in part to be

2    that under the law, Macy's is not a consumer, so to the extent

3    that "Youngblood" was somehow internally used doesn't violate

4    the trademark law.

5            And I don't know what the argument is about the site,

6    the Internet site, and in the motions in limine, what I've

7    noticed is that the plaintiff has an inordinately large number

8    of experts that it proposes to call -- I think five -- and it's

9    unclear to me why there needs to be five experts.  And, of

10   course, there are some issues in the nature of *Daubert*-type

11   motions raised with the -- regarding the qualification of any

12   of these experts.

13           So let me briefly hear from the plaintiff first, just

14   to make sure I have your theory in mind.  Do you want to take

15   the lectern.  You're ...

16           MR. HAMILTON:  Chris Hamilton for the plaintiff.

17           THE COURT:  Hamilton.  Yes.  And starting with sort

18   of the overview, did I state your claims correctly, at least

19   insofar as Macy's is concerned?  You didn't sell very many

20   watches, did you?  I thought 1500 or so.

21           MR. HAMILTON:  Around 2500 Your Honor.

22           THE COURT:  2500.  So what is your theory -- I know

23   I'm starting at the end, backwards, but what is your theory of

24   damages, because in intellectual property one theory is that

25   all the sales of the defendant would have been our sale but for

 1    the infringement, correct?  Is that your theory?

 2           MR. HAMILTON:  That is in part our theory, Your

 3    Honor.  There's also the theory of the simple disgorgement of

 4    the defendant's profits.

 5           THE COURT:  Yes.  But in terms of disgorgement of

 6    profits, don't you have to show -- you don't have to show that

 7    you would have made sale but for the defendant making the sale?

 8           MR. HAMILTON:  That's correct, Your Honor.  Under the

 9    first theory of disgorgement of profits that Your Honor has

10    addressed where the plaintiff is contending that but for the

11    defendant's infringing or wrongful activity, the plaintiff

12    would have made a sale, the Ninth Circuit allows that theory of

13    disgorgement absent a finding of willfulness; however, if there

14    is intentional conduct or willful conduct present, then the

15    disgorgement is appropriate regardless of whether we can prove

16    per se that a particular sale would have been made --

17           THE COURT:  Now, let's take the Macy's situation.

18    Are you saying that it's an infringement if the defendant used

19    your name solely internally?

20           MR. HAMILTON:  No, Your Honor.  We're not saying it's

21    an infringement if the defendant used our name solely

22    internally; however, I don't believe that's true --

23           THE COURT:  Let me take it a step at a time.  You do

24    say that the plaintiff used the name "Youngblood" in dealing

25    with Macy's, correct?

1        MR. HAMILTON:  The plaintiff -- yes, Your Honor --

2        THE COURT:  I mean the defendant.

3        MR. HAMILTON:  Yes, Your Honor.

4        THE COURT:  And the defendant did that by referencing

5   "Youngblood" in this order sheet or some -- what type of

6   internal document -- it was an internal document, wasn't it?

7        MR. HAMILTON:  It was not an internal document, Your

8   Honor.

9        THE COURT:  What was it?

10       MR. HAMILTON:  The first use of the term was in the

11  line sheets, which is sent to third-party retailers, not just

12  Macy's, but third-party retailers, anyone that might be a

13  purchaser of the defendant's --

14       THE COURT:  Well, is a line sheet sent to third-party

15  retailers -- is that a trademark infringement?

16       MR. HAMILTON:  That in and of itself is perhaps not a

17  trademark infringement, but it is the connection and series of

18  actions by the defendant which together, in addition to just

19  the line sheet use, also the use and training materials which

20  instructed the sales representatives to communicate the

21  platform to the customer.

22       THE COURT:  So in the training materials of the

23  defendant, what was the most significant feature that -- that

24  speaks to infringement?

25       MR. HAMILTON:  Well, Fossil puts its own direct sales

```
 1   representatives behind the counter at Macy's, so we have a kind
 2   of unique situation where Fossil have directed employees at
 3   Macy's that are educated and in turn educate the Macy's
 4   employees about the sale of the product.  Our clients have been
 5   into the store at Macy's and asked for Youngblood watches and
 6   had the persons behind the counter direct them to Diesel
 7   Youngblood watches.  The sales materials or the training
 8   materials that Fossil provides to both its employees, and to
 9   Macy's employees, according to the testimony of the defendant's
10   witnesses, trained the representatives in these various line
11   designation and name designation and then instructed those --
12            THE COURT:  But why would the -- just as a matter of
13   basic business, why would a company like defendant -- which is
14   a substantial company, correct?
15            MR. HAMILTON:  Yes, Your Honor.
16            THE COURT:  -- why would they try to parlay the name
17   "Youngblood" if Youngblood only sold 2500 watches?  What magic
18   would Youngblood achieve that would warrant that kind of
19   copying?
20            MR. HAMILTON:  Very good point.  The unique situation
21   in this case, Your Honor, is that the plaintiff was an
22   African-American owned company.  It is exceedingly rare in the
23   history of this country for that phenomenon to have occurred.
24   In fact, that is the reason --
25            THE COURT:  What phenomenon occurred?
```

1      MR. HAMILTON:  That an African-American owned

2 watchmaker -- there's no other example --

3      THE COURT:  I don't know if that's so or not, but did

4 Youngblood have some reputation in that regard?

5      MR. HAMILTON:  Yes, Your Honor.

6      THE COURT:  Where?

7      MR. HAMILTON:  In fact, the corporate representative

8 of Macy's, who was Macy's head watch buyer, testified that

9 Macy's was interested associating itself with Youngblood Time

10 Pieces because of the goodwill that Youngblood Time Pieces had

11 in the African-American consuming public.

12      THE COURT:  But how could they have good will -- I

13 mean the African -- the black population in this country is

14 substantial, and it may be a minority, but it's a substantial

15 minority.  I don't know what the latest census figures are, but

16 I would say that there must be 40, 50 million black people.

17 And you're saying that you sold 2500 watches, and you're

18 assuming only black people bought the watches, so you're saying

19 that based upon -- where did they advertise this Youngblood

20 watch?

21      MR. HAMILTON:  The advertisements were done in

22 various radio mediums.  There were newspaper articles --

23      THE COURT:  How much advertising?

24      MR. HAMILTON:  There was about $750,000 that was

25 spent on advertising.

```
 1            THE COURT:  Over how long?

 2            MR. HAMILTON:  Over a period -- that was

 3   predominantly from 2005 to 2008 -- or through 2008.

 4            THE COURT:  When did the infringing activity occur?

 5            MR. HAMILTON:  At the end of 2009.

 6            THE COURT:  So this must have been a losing

 7   proposition if a company spent $750,000 advertising -- is the

 8   only product of Youngblood, these watches or --

 9            MR. HAMILTON:  Watches, yes.

10            THE COURT:  So if they only sold 2500 watches, they

11   must have lost quite a bit of money.  That is beside the point,

12   but they must have.

13            MR. HAMILTON:  They had not gotten to the point where

14   they were making substantial profits or return on their

15   investment, but these watches were worn by a number of

16   celebrities; they were featured in *Woman's Wear Daily*; they

17   were featured in prominent publications.

18            THE COURT:  All right.  Let's assume, at least at

19   this point, that there was a certain cache or good will with

20   the Youngblood watches.  So your theory is that that was known

21   to defendant, and defendant didn't want to use the name

22   "Youngblood" on its watch because it felt that would be an

23   infringement, and so it tried to engage in this roundabout

24   conduct to take advantage of the name, correct?

25            MR. HAMILTON:  More or less, yes, Your Honor.
```

```
 1            THE COURT:  Something like that.

 2            Now, what was the -- what price did the Youngblood

 3  watch sell at?

 4            MR. HAMILTON:  Between 85 to $150, generally.  Some

 5  went up to $250.

 6            THE COURT:  What was the price of the competing

 7  watch?

 8            MR. HAMILTON:  Similar range, between 85 to $100.

 9            THE COURT:  And your watch had "Youngblood" on it,

10  right?

11            MR. HAMILTON:  Correct, Your Honor.

12            THE COURT:  And what about this Internet part.  I

13  wasn't quite sure about that.  Was there a part of your case

14  that relied upon some potential confusion in the Internet site?

15            MR. HAMILTON:  Yes, Your Honor.  In 2010, Fossil did

16  at least two press releases we've seen.  While Fossil contends

17  the use was internal, they did a blogger outreach program, or a

18  blogger press release in 2010, where they used the Youngblood

19  name in connection with photos of Diesel watches, including a

20  photo of an African-American wearing one of the Diesel

21  Youngblood watches, and I believe as a result -- or in some

22  form or fashion as a result of a noninternal use, if you go

23  online to this day and type in "Youngblood watch" on the

24  Internet, the majority of the results, you'll see one find for

25  Youngblood Time Pieces; most of them are Diesel Youngblood.
```

1   You will see a link to a dealer site --

2         THE COURT:  I'm not following you.  In other words,

3   if you type in -- log in to "Youngblood," you're going to find

4   the defendant's watches?

5         MR. HAMILTON:  If you type "Youngblood watch" into

6   Google or Yahoo!; you will find the defendant's watch is

7   labeled "Diesel Youngblood."  Now, at this time, the defendants

8   do not on their direct site -- if you go to Fossil's site at

9   this point and you type in "Youngblood," you won't find the

10  direct connection to those watches; however, if you go online

11  and you type that in, you will find Amazon, you will find

12  Dillard's.  It's my understanding that at one point, you would

13  find Macy's -- you will find a whole host of sites.  In fact,

14  hundreds selling Diesel Youngblood watches.

15        THE COURT:  Clarify that for me.  You're saying that

16  if you type in "Youngblood," you will see pictures of the

17  defendant's watches?

18        MR. HAMILTON:  Yes, Your Honor and --

19        THE COURT:  To this day?

20        MR. HAMILTON:  To this day, absolutely.  Last night

21  we looked at it, and there's is a link to a Dillard's listing

22  for a Youngblood watch and another instance where Dillard's is

23  linking to a URL that says "Dillard's Youngblood."

24        THE COURT:  Okay.  Let me hear from the --

25        MR. McRAE:  Good afternoon, Your Honor.  Marcellus

1    McRae, Gibson, Dunn and Crutcher.  There are a number of

2    points that the court covered.  I'd like to take them up.  I

3    think a lot of the questions really kind of got to the very

4    pulse of what we see is the problem with the case.  First of

5    all, to establish some sort of infringement, the relevant

6    issue, of course, is not use, but whether or not it is a use of

7    the name "Youngblood" as some sort of indicator of source or

8    brand; and I think that's sort of a pivotal issue here because,

9    as the court has indicated in questioning, the nature of the

10   use and all of the evidence that's been submitted is that

11   you're talking about using the name Youngblood at Diesel and

12   Fossil as a means to indicate merely a style of watch within a

13   collection.  So you have a collection called "Diesel," and they

14   have multiple styles.  Some are called "advanced," not-so-basic

15   basic, lady's, and one of the names that happened to be

16   developed is also Youngblood.

17          As the court has correctly synthesized what our

18   position is, we contend that there is no evidence, because this

19   did not happen, that the defendants at any time ever used the

20   name Youngblood at the point of sale on the Internet or any

21   place else to sell a watch to a consumer as opposed to a

22   customer which would be a retailer like Macy's, et cetera, but

23   we're only talking about --

24          THE COURT:  I'm sort of getting ahead of the motion.

25   I'm just trying to get my thinking into it.  Has the

1  plaintiff -- the plaintiff, while it hasn't said so, hasn't

2  argued that there is direct evidence of defendant saying to a

3  consumer, Buy our Youngblood watch.  I think what the plaintiff

4  is saying is that it has -- without naming it the Youngblood

5  watch in the case at Macy's, it had its representatives there,

6  it has sort of -- in a kind of a whisper like way saying, Oh

7  you mean the Youngblood watch, or whatever.  And the plaintiff

8  maintains that Youngblood has achieved, notwithstanding limited

9  sales, some reputation, and that if you dial up Youngblood,

10 you're going to see pictures of defendant's watch, which will

11 confuse the consumer because the consumer can dial up that

12 site.

13         So if the consumer dials up the site, sees a picture

14 of a watch and the name "Youngblood," it will go to -- the

15 issue will go to a store and look for that watch and buy that

16 watch.  I mean that seems to be what they're saying.  Is it

17 enough to create an issue of fact, or is it too insubstantial,

18 too speculative?

19         MR. McRAE:  It is too insubstantial and too

20 speculative for a number of reasons.  There were several layers

21 to what the court added in.  I'm going to work backwards.

22         THE COURT:  Yes.

23         MR. McRAE:  The first of which is this notion of the

24 Internet third-party references.  This is a subject of some

25 fairly extensive briefing and motions in limine, and I'm not

1    going to argue the evidentiary objections about lack of

2    authentication and hearsay with respect to these items.  Let me

3    get to the legal and factual issue, which is that of course

4    when you're talking about infringement, you have to be talking

5    about conduct of the defendants.  And we submit that we --

6    being Macy's and Fossil -- did not authorize, pay for,

7    encourage or cause any of these third-party Internet site

8    references that they speak of.

9              THE COURT:  What if the plaintiff introduces evidence

10   of consumers who testify -- as Mr. Hamilton outlined -- that

11   some representative of defendant was behind the counter and

12   steered a consumer to a Youngblood watch which was really

13   defendant's watch?

14             MR. McRAE:  I will switch and answer the court's

15   question directly, but if I could just put a fine point on the

16   issue about the Internet references.

17             THE COURT:  Yes.

18             MR. McRAE:  Counsel, when he was explaining to you

19   the theory about the Internet references, at one point said --

20   and I think I actually wrote it down -- that I have to assume,

21   essentially, that if there was some internal reference on a

22   line sheet, for example, which is a sheet that shows the

23   different styles of a Youngblood watch, that there must have

24   been some seepage of that out to someone who then posted

25   something on the Internet.  And in order to create a triable

```
 1    issue of fact, I would assume is not sufficient, it's

 2    speculation and conjecture, and the fact of the matter is --

 3    and then I'll answer the court's next question -- there is not

 4    any evidence, whether it be direct or circumstantial, that

 5    these defendants had anything whatsoever to do with the posting

 6    of whatever information appears on the Internet, and there's

 7    not going to be any evidence before the court in connection

 8    with the summary judgment that shows that.  I can answer the

 9    court's other question --

10             THE COURT:  Just one moment.  One question here.

11    Then if the plaintiff's description of the Internet site is

12    correct, why would somebody tout the defendant's product other

13    than the defendant?

14             MR. McRAE:  Your Honor, we believe that there are

15    things like the -- the references they're talking about are

16    like eBay or Face Book, et cetera.  People can sell on the gray

17    market.  They can have secondary sales.  The fact of the matter

18    is that as the party with the burden of proof, there is

19    absolutely no context or foundation with respect to these

20    third-party points --

21             THE COURT:  Let me ask you this.

22             MR. McRAE:  Certainly.

23             THE COURT:  My lack of familiarity with eBay and so

24    forth -- does eBay give a source of who advertises the product?

25             MR. McRAE:  That's a great question.
```

```
 1            THE COURT:  I don't know.

 2            MR. McRAE:  You've now exceeded my limited

 3   capacity --

 4            THE COURT:  Maybe they don't.  Maybe that's the whole

 5   point of it.  You can rob a Picasso and put it on eBay, and the

 6   guy who robbed the Picasso doesn't want to be unfounded --

 7            MR. McRAE:  That is an excellent question, Your

 8   Honor.  But suffice it to say that whether it traces the origin

 9   of it or not, we would be confident that it wouldn't show

10   either of the defendants, and going back to the burden of proof

11   in order to create a triable issue of fact on something other

12   than conjecture, the record is bereft of any evidence --

13            THE COURT:  Let me segue, because I'm going to --

14   this has been helpful.

15            MR. McRAE:  Your Honor, may I get my water there?

16            THE COURT:  Please.

17            MR. McRAE:  Thank you.

18            THE COURT:  Now, looking to the damage aspect and

19   these experts, I've taken a peek at the motions in limine, and

20   I'm not fully prepared to rule on them.  But what about the

21   damage theory?  In other words, the theory seems to be, one

22   part, that all your sales would have been our sales but for

23   your infringing, and then the argument seems to be that if

24   there's willful infringement, then we don't have to show that

25   all our sales -- all your sales would have been our sales.  We
```

```
 1     can still get your profits.  So let's focus on willful.

 2              What evidence is there of willfulness?

 3              MR. McRAE:  None.

 4              THE COURT:  What about this manual that the plaintiff

 5     referred to, which the way plaintiff described it, it was sort

 6     of a way to skirt around infringement.

 7              MR. McRAE:  Your Honor, it suffers from the same

 8     deficiency in logic and fact as everything else that the

 9     plaintiff points to, which is not whether the name Youngblood

10     appeared in a document but how it was used and in what manner

11     it was used.  The difficulty is that with respect to these

12     documents, here's what you have, Your Honor --

13              THE COURT:  Do the watches look alike at all?

14              MR. McRAE:  Not at all, not even close.

15              THE COURT:  Not that it, maybe, is pivotal, but how

16     did you come upon the name Youngblood?  Is that --

17              MR. McRAE:  I can answer that.

18              THE COURT:  Yes.

19              MR. McFARLAND:  May I just make one point before I do

20     that, real briefly?

21              THE COURT:  Yes.

22              MR. McRAE:  The name Youngblood is never on the

23     Diesel watches or packaging, and the court has correctly stated

24     what our point is, is that it's not marketed as such or used as

25     such.  All the blogger kits and press kits and everything else
```

1    that they talked about did not materialize in any

2    consumer-facing advertising.  In other words, advertising going

3    directly to those consumers.  That was at the hands of either

4    of the defendants.

5            With respect to how did we come across the name

6    Youngblood -- and Your Honor, I have some of the watches right

7    here --

8            THE COURT:  I don't --

9            MR. McRAE:  There was a movie -- and I'm old enough

10   to know this -- called "Youngblood" in the '80s starring Rob

11   Lowe and Patrick Swayze.  One of the interesting things about

12   this case is that those are obviously both white males.  One of

13   the contentions that the plaintiff has in this case is that the

14   name Youngblood has some sort of special idiosyncratic meaning

15   within the African-American community that is sort of a

16   talisman in terms of attracting sales.  One of the more

17   interesting things is it's conspicuous absence of consumer

18   evidence or third-party evidence of people who aren't

19   affiliated as stakeholders or employees of the plaintiff who

20   say that.  In other words, there's absolutely no evidence of

21   that in the record whatsoever, which is important in terms of

22   sort of a threshold issue about confusion.  It assumes that

23   people even know who you are in the first place such that there

24   could even be a possibility of confusion, which is one of the

25   root deficiencies in their entire case.  And again, I can't

```
 1    over emphasize how strongly we agree with the court, but to

 2    trace the linage of the defect in this case, it begins and ends

 3    with sales.

 4              These watches came to Macy's.  They had a sale rate

 5    of less than one percent, meaning of the 760 watches that were

 6    bought, it took 40 months to sell them in approximately 12

 7    stores.  That's less than 20 watches per month.  Your Honor,

 8    whether you're a study --

 9              THE COURT:  What kind of profits did you have on

10    these watches?

11              MR. McRAE:  Your Honor, we -- "we" being Macy's --

12    actually had to discount --

13              THE COURT:  What about Diesel?  How many watches did

14    they --

15              MR. McRAE:  Diesel -- I personally don't have those

16    numbers.  I could get them from one of my colleagues here.

17              THE COURT:  Just ballpark.

18              MR. McRAE:  Seven million?

19              MR. HAMILTON:  Seven million, Your Honor.

20              MR. McRAE:  Per annum -- total.  Seven million in the

21    relevant period?

22              THE COURT:  Seven million in sales, right?

23              MR. McRAE:  Yes, gross sales.

24              MR. HAMILTON:  Profits, Your Honor.

25              MR. McRAE:  We say gross sales, Your Honor.  But
```

```
 1   suffice it to say that --

 2            THE COURT:  Something to fight about.  It's more than

 3   laundry money.

 4            MR. McRAE:  Right, more than a few dinners.  So in

 5   terms of the discrepancy between those sales and the sales of

 6   the plaintiff, there's another corollary that the court hit on,

 7   which is advertising.  There was some reference of $750,000 in

 8   advertising.  That was over a five-year period by the

 9   plaintiff.  That's approximately $150,000 a year.  In

10   comparison, the established brands that go through Macy's, they

11   spend millions of dollars in order to get sales penetration,

12   visibility, et cetera.  So, in essence, when you were asking

13   what their case is about, our case in a nutshell I think, to

14   the extent that we have an explanation in context for this, is

15   as follows:  We have two men that tried to start a watch

16   company, chronically under capsulized, not any business

17   experience, other worldly optimism in terms of their business

18   plans.  It didn't materialize.  They put their eggs in one

19   basket, which is going to Macy's.  If they wanted to sue

20   somebody with respect to why their business failed, it should

21   be the general public because they didn't buy their watches,

22   but you can't do that.  So what have they done?  They've come

23   in, and they've tried to say that they if you had any

24   reference --

25            THE COURT:  You know something?  You hope you don't
```

```
 1   have to repeat this argument.

 2            MR. McRAE:  That's correct.

 3            THE COURT:  That is your jury argument.

 4            MR. McRAE:  That's correct.

 5            THE COURT:  So let's wait on that.

 6            MR. McRAE:  I'll back up.

 7            THE COURT:  You know something, I'm going to have to

 8   go back and plow into this because nothing I've said is in

 9   cement, but both sides have acclimated me, and we'll pick it up

10   next Monday, okay?

11            MR. HAMILTON:  Thank you, Your Honor.

12            MR. McRAE:  Thank you, Your Honor.

13

14                        - - - - -

15                  C E R T I F I C A T E

16

17       I hereby certify that the foregoing is a true and

18   correct transcript from the stenographic record of

19   the proceedings in the foregoing matter.

20

21                                      June 12, 2012

22   _____        _____

23   Deborah K. Gackle                    Date
     Official Court Reporter
24   CSR No. 7106

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT
COURT REPORTER DEBORAH K. GACKLE

**$**

$100 [1] 12/8
$150 [1] 12/4
$150,000 [1] 22/9
$250 [1] 12/5
$750,000 [3] 10/24 11/7 22/7

**'**

'80s [1] 20/10

**-**

--O0O [1] 4/2

**1**

1 [2] 1/17 4/1
11-8175-SVW [1] 1/9 4/4
1100 [1] 2/18
1149 [1] 1/25
12 [2] 21/6 23/21
1500 [1] 6/20
17 [1] 4/4
1701 [1] 2/7

**2**

20 [1] 21/7
200 [1] 2/7
2005 [1] 11/3
2008 [2] 11/3 11/3
2009 [1] 11/5
2010 [2] 12/15 12/18
2012 [3] 1/17 4/1 23/21
213 [1] 1/25
213-229-7675 [1] 3/5
214-234-7300 [1] 2/14
214-234-7900 [1] 2/14
214-635-5643 [1] 2/8
214-752-6929 [1] 2/9
2500 [5] 6/21 6/22 9/17 10/17 11/10
2870 [1] 2/19

**3**

310-248-3830 [1] 3/10
312 [1] 1/24
3197 [1] 3/5
325 [1] 2/13
3300 [1] 2/13
333 [1] 3/4
3830 [1] 3/10
3:20 [1] 4/1

**4**

40 [2] 10/16 21/6
4000 [1] 2/18
402A [1] 7/12
45th [1] 3/4

**5**

50 million [1] 10/16
5081 [1] 2/20
5643 [1] 2/8

**6**

620-1149 [1] 1/25
6929 [1] 2/9

**7**

7106 [1] 23/24
7300 [1] 2/14
75201 [1] 2/13
75202 [1] 2/8
760 [1] 21/5
7675 [1] 3/5
7900 [1] 2/14

**8**

85 [1] 12/4

**9**

90012 [1] 1/24
90071-3197 [1] 3/5
90212 [1] 3/10
92660 [1] 2/19
949-258-5081 [1] 2/20
949-502-2870 [1] 2/19
9720 [1] 3/9

**A**

about [22] 5/4 6/5 9/4 10/24 12/12 12/13 14/11 14/23 16/1 16/4 16/5 16/16 16/19 17/15 18/20 19/4 20/1 20/11 20/22 21/13 22/2 22/13
absence [1] 20/17
absent [1] 7/13
absolutely [3] 13/20 17/19 20/20
acclimated [1] 23/9
according [1] 9/9
achieve [1] 9/18
achieved [1] 15/8
across [1] 20/5
actions [1] 8/18
activity [2] 7/11 11/4
actually [2] 16/20 21/12
added [1] 11/5
addition [1] 8/18
addressed [1] 7/10
advanced [1] 14/14
advantage [1] 11/24
advertise [1] 10/19
advertised [1] 5/19
advertisements [1] 10/21
advertises [1] 17/24
advertising [7] 10/23 10/25 11/7 20/2 20/2 22/7 22/8
affiliated [1] 20/19
African [6] 9/22 10/1 10/11 10/13 12/20 20/15
African-American [5] 9/22 10/1 10/11 12/20 20/15
afternoon [5] 4/7 4/13 4/15 4/18 13/25
again [1] 20/25
agree [1] 21/1
ahead [1] 14/24
al [1] 1/10
alike [1] 19/13
all [10] 6/25 11/18 14/5 14/10 18/22 18/25 18/25 19/13 19/14 19/25
allegation [1] 5/10
allows [1] 7/12
also [5] 4/12 5/20 7/3 8/19 14/16
Amazon [1] 13/11
American [5] 9/22 10/1 10/11 12/20 20/15
among [1] 5/9
ANGELES [4] 1/16 1/24 3/5 4/1
annum [1] 21/20
another [2] 13/22 22/6
answer [4] 16/14 17/3 17/8 19/17
Anthony [1] 3/8
any [10] 6/11 14/19 14/20 16/7 17/4 17/7 18/12 20/1 22/16 22/23
anyone [1] 8/12
anything [1] 17/5
appearance [2] 4/6 5/11
APPEARANCES [1] 2/1
appeared [1] 19/10
appearing [1] 4/8
appears [1] 17/6
appropriate [1] 7/15

approximately [2] 21/6 22/9
are [11] 6/10 7/18 9/3 10/15 12/25 14/1 14/14 17/14 17/15 20/12 20/23
aren't [1] 20/18
argue [1] 16/1
argued [1] 15/2
argument [4] 6/5 18/23 23/1 23/3
around [2] 6/21 19/6
articles [1] 10/22
as [18] 5/17 5/19 6/19 9/12 12/21 12/22 14/7 14/9 14/12 14/17 14/21 16/10 17/18 19/8 19/24 19/24 20/19 22/15
ask [1] 17/21
asked [1] 9/5
asking [1] 22/12
aspect [1] 18/18
associating [1] 10/9
assume [3] 11/18 16/20 17/1
assumes [1] 20/22
assuming [1] 10/18
at [27]
attracting [1] 20/16
authentication [1] 16/2
authorize [1] 16/6
Avenue [1] 3/4
awkwardly [1] 4/21

**B**

back [3] 18/10 23/6 23/8
backwards [2] 6/23 15/21
ballpark [1] 21/17
based [1] 10/19
basic [2] 9/13 14/14 14/15
basket [1] 22/19
be [21] 4/21 5/11 5/25 6/1 6/9 8/12 10/14 10/16 11/22 14/15 14/22 15/16 16/4 17/4 17/7 18/6 18/9 18/21 18/23 20/24 22/21
Beach [1] 2/19
because [10] 4/22 6/24 10/10 11/22 14/8 14/18 15/11 18/13 22/21 23/8
been [9] 6/25 7/16 9/4 11/6 14/10 16/24 18/14 18/22 18/25
before [3] 4/25 17/7 19/19
begins [1] 21/2
behalf [3] 4/8 4/16 4/19
behind [3] 9/1 9/6 16/11
being [2] 16/6 21/11
believe [5] 5/10 5/12 7/22 12/21 17/14
bereft [1] 18/12
beside [1] 11/11
between [3] 12/4 12/8 22/5
Beverly [1] 3/10
bit [1] 11/11
black [3] 10/13 10/16 10/18
blogger [3] 12/17 12/18 19/25
Blvd [1] 3/9
Book [1] 17/16
both [3] 9/8 20/12 23/9
bought [2] 10/18 21/6
Boulevard [1] 2/18
brand [1] 14/8
brands [1] 22/10
briefing [1] 15/25
briefly [3] 4/25 6/13 19/20
burden [2] 17/18 18/10
business [4] 9/13 22/16 22/17 22/20
but [30]
buy [3] 15/3 15/15 22/21
buyer [1] 10/8

**C**

CA [3] 2/19 3/5 3/10
cache [1] 11/19

**C**

calendar [1] 4/22
CALIFORNIA [4] 1/2 1/16 1/24 4/1
call [1] 6/8
called [3] 15/13 14/14 20/10
came [1] 21/4
can [8] 7/15 15/11 17/8 17/16 17/17 18/5
 19/1 19/17
can't [2] 20/25 22/22
capacity [1] 18/3
capsulized [1] 22/16
case [12] 5/5 5/14 9/21 12/13 14/4 15/5 20/12
 20/13 20/25 21/2 22/13 22/13
cause [1] 16/7
celebrities [1] 11/16
cement [1] 23/9
census [1] 10/15
CENTRAL [1] 1/2
certain [2] 5/21 11/19
Certainly [1] 17/22
certify [1] 23/17
cetera [3] 14/22 17/16 22/12
chamilton [1] 2/15
Chris [2] 4/13 6/16
Christopher [1] 2/12
chronically [1] 22/16
Circuit [1] 7/12
circumstantial [1] 17/4
claims [2] 5/5 6/18
Clarify [1] 13/15
clients [1] 9/4
close [1] 19/14
colleagues [1] 21/16
collection [2] 14/13 14/13
come [3] 19/16 20/5 22/22
communicate [1] 8/20
community [1] 20/15
company [6] 5/8 9/13 9/14 9/22 11/7 22/16
comparison [1] 22/10
competing [1] 12/6
concerned [1] 6/19
conduct [4] 7/14 7/14 11/24 16/5
conference [3] 1/20 4/20 4/24
confident [1] 18/9
confuse [1] 15/11
confusing [1] 5/25
confusingly [1] 5/11
confusion [3] 12/14 20/22 20/24
conjecture [2] 17/2 18/12
connection [4] 8/17 12/19 13/10 17/7
conspicuous [1] 20/17
consumer [12] 5/13 5/19 5/25 6/2 14/21 15/3
 15/11 15/11 15/13 16/12 20/2 20/17
consumer-facing [1] 20/2
consumers [2] 16/10 20/3
consuming [1] 10/11
contend [1] 14/18
contending [1] 7/10
contends [1] 12/16
contentions [1] 20/13
context [2] 17/19 22/14
copying [1] 9/19
corollary [1] 22/6
corporate [1] 10/7
correct [10] 7/1 7/8 7/25 9/14 11/24 12/11
 17/12 23/2 23/4 23/18
correctly [1] 6/18 14/17 19/23
could [4] 10/12 16/15 20/24 21/16
COUNSEL [3] 2/1 4/6 16/18
counter [3] 9/1 9/6 16/11
country [2] 9/23 10/13
course [3] 6/10 14/6 16/3

court [10] 1/1 14/2 14/9 14/17 15/21 17/7
 10/23 21/1 22/6 23/23
court's [3] 16/1 17/5 17/9
Courthouse [1] 1/23
covered [1] 14/2
create [3] 15/17 16/25 18/11
created [1] 5/5
Crutcher [2] 3/4 4/8 14/1
CSR [1] 1/23 23/24
customer [2] 8/21 14/22
cut [1] 4/25
CV [2] 1/9 4/4

**D**

Daily [1] 11/16
Dallas [2] 2/8 2/13
damage [2] 18/18 18/21
damages [1] 6/24
Date [1] 23/23
Daubert [1] 6/10
Daubert-type [1] 6/10
day [3] 12/23 13/19 13/20
dealer [1] 13/1
dealing [1] 7/24
dealt [1] 5/15
DEBORAH [1] 1/23 23/23
defect [1] 21/2
defendant [19] 5/8 5/12 5/15 5/15 5/18 6/25
 7/7 7/18 7/21 8/2 8/4 8/18 8/23 9/13 11/21
 11/21 15/2 16/11 17/13
defendant's [12] 5/10 5/22 7/4 7/11 8/13 9/9
 13/4 13/6 13/17 15/10 16/13 17/12
defendants [9] 1/11 3/4 4/9 13/7 14/19 16/5
 17/5 18/10 20/4
deficiencies [1] 20/25
deficiency [1] 19/8
department [1] 5/9
described [1] 19/5
description [1] 17/11
design [1] 5/6
designated [1] 5/22
designation [3] 5/17 9/11 9/11
developed [2] 5/5 14/16
dial [2] 15/9 15/11
dials [1] 15/13
did [16] 6/18 6/20 8/4 10/3 10/19 11/4 12/2
 12/15 12/17 14/19 16/6 19/16 20/1 20/5 21/9
 21/13
didn't [5] 5/6 6/19 11/21 22/18 22/21
Diesel [11] 9/6 12/19 12/20 12/25 13/7 13/14
 14/11 14/13 19/23 21/13 21/15
different [1] 16/23
difficulty [1] 19/11
Dillard's [4] 13/12 13/21 13/22 13/23
dinners [1] 11/6
direct [6] 8/25 9/6 13/8 13/10 15/2 17/4
directed [1] 9/2
directly [2] 16/15 20/3
discount [1] 21/12
discrepancy [1] 22/5
discussion [1] 5/3
disgorgement [5] 7/3 7/5 7/9 7/13 7/15
DISTRICT [3] 1/1 1/2 1/5
do [8] 5/13 6/14 7/23 13/8 17/5 19/13 19/19
 22/22
document [4] 8/6 8/6 8/7 19/10
documents [1] 19/12
does [2] 5/13 17/24
doesn't [2] 6/3 18/6
dollars [1] 22/11
don't [15] 5/9 5/12 5/24 6/5 7/6 7/6 7/22 10/3
 10/15 18/1 18/4 18/24 20/8 21/15 22/25
done [2] 10/21 22/22

down [1] 16/20
Dunn [3] 3/4 4/8 14/1

**E**

eBay [4] 17/16 17/23 17/24 18/5
educate [1] 9/3
educated [1] 9/3
eggs [1] 22/18
either [2] 18/10 20/3
else [3] 14/21 19/8 19/25
Email [5] 2/9 2/15 2/20 3/6 3/11
emphasize [1] 21/1
employees [5] 9/2 9/4 9/8 9/9 20/19
encourage [1] 16/7
end [2] 6/23 11/5
ends [1] 21/2
engage [1] 11/23
enough [2] 15/17 20/9
entire [1] 20/25
essence [1] 22/12
essentially [1] 16/21
establish [1] 14/5
established [1] 22/10
et [4] 1/10 14/22 17/16 22/12
et cetera [3] 14/22 17/16 22/12
even [3] 19/14 20/23 20/24
ever [1] 14/19
everything [2] 19/8 19/25
evidence [11] 14/10 14/18 15/2 16/9 17/4
 17/7 18/12 19/2 20/18 20/20 20/20
evidentiary [1] 16/1
example [2] 10/2 16/22
exceeded [1] 18/2
exceedingly [1] 9/22
excellent [1] 18/7
experience [1] 22/17
experts [4] 6/8 6/9 6/12 18/19
explaining [1] 16/18
explanation [1] 22/14
extensive [1] 15/25
extent [2] 6/2 22/14

**F**

Face [1] 17/16
facing [1] 20/2
fact [9] 9/24 10/7 13/13 15/17 17/1 17/2
 17/17 18/11 19/8
factual [1] 16/3
failed [1] 22/20
fairly [1] 15/25
familiarity [1] 17/23
fashion [1] 12/22
Fax [3] 2/9 2/14 2/20
feature [1] 8/23
featured [2] 11/16 11/17
felt [1] 11/22
few [1] 22/4
fight [1] 22/2
figures [1] 10/15
find [8] 12/24 13/3 13/6 13/9 13/11 13/11
 13/13 13/13
finding [1] 7/13
fine [1] 16/15
first [6] 6/13 7/9 8/10 14/4 15/23 20/23
five [2] 6/8 6/9 22/8
five-year [1] 22/8
Floor [1] 3/4
focus [1] 19/1
following [1] 13/2
follows [1] 22/15
foregoing [2] 23/17 23/19
form [1] 12/22
forth [1] 17/24

## F

**FOSSIL** [16] 1/10 4/5 5/16 8/25 9/2 9/8 12/15 12/16 14/12 16/6
**Fossil's** [1] 13/8
**foundation** [1] 17/19
**fully** [1] 18/20
**further** [1] 5/3

## G

**GACKLE** [2] 1/23 23/23
**general** [2] 5/11 22/21
**generally** [2] 5/4 12/4
**get** [9] 4/25 5/1 5/2 14/25 16/3 18/15 19/1 21/16 22/11
**getting** [1] 14/24
**Gibson** [3] 3/4 4/8 14/1
**gibsondunn.com** [1] 3/6
**give** [1] 17/24
**go** [7] 12/22 13/8 13/10 15/14 15/15 22/10 23/8
**going** [11] 5/2 13/3 15/10 15/21 16/1 17/7 18/10 18/13 20/2 22/19 23/7
**good** [9] 4/7 4/10 4/13 4/15 4/18 9/20 10/12 11/19 13/25
**goodwill** [1] 10/10
**Google** [1] 13/6
**got** [1] 14/3
**gotten** [1] 11/13
**Grand** [1] 3/4
**gray** [1] 17/16
**great** [1] 17/25
**gross** [2] 21/23 21/25
**guess** [1] 5/23
**guy** [1] 18/6

## H

**had** [10] 5/19 9/6 10/10 11/13 12/9 15/5 17/5 21/4 21/12 22/23
**Hamilton** [6] 2/12 2/12 4/14 6/16 6/17 16/10
**hands** [1] 20/3
**happen** [1] 14/19
**happened** [1] 14/15
**has** [13] 5/6 6/7 7/9 14/9 14/17 14/25 15/4 15/6 15/8 18/14 19/23 20/13 20/14
**hasn't** [2] 15/1 15/1
**Hastings** [2] 2/6 4/16
**have** [37]
**he** [1] 16/18
**head** [1] 10/8
**hear** [3] 4/11 6/13 13/24
**heard** [1] 4/23
**hearsay** [1] 16/2
**helpful** [1] 18/14
**here** [5] 4/9 14/8 17/10 20/7 21/14
**here's** [1] 19/12
**hereby** [1] 23/17
**Hills** [1] 3/10
**history** [1] 9/23
**hit** [1] 22/6
**Honor** [34]
**HONORABLE** [1] 1/5
**hope** [1] 22/25
**host** [1] 13/13
**how** [8] 10/12 10/23 11/1 19/10 19/15 20/5 21/1 21/13
**however** [3] 7/13 7/22 13/10
**hundreds** [1] 13/14

## I

**I'd** [1] 14/2
**I'll** [2] 17/3 23/6
**I'm** [13] 4/9 4/11 5/2 6/23 13/2 14/24 14/25 15/21 15/25 18/13 18/20 20/9 23/7

**I've** [3] 6/6 18/19 23/8
**idea** [1] 5/23
**idiosyncratic** [1] 20/5
**if** [24]
**important** [1] 20/21
**imprinted** [1] 5/20
**in** [84]
**INC** [6] 1/7 1/10 4/5 4/14 4/17 4/19
**including** [1] 12/19
**Incorporated** [1] 4/5
**indicate** [1] 14/12
**indicated** [1] 14/9
**indicator** [1] 14/7
**information** [1] 17/6
**infringement** [11] 7/1 7/18 7/21 8/15 8/17 8/24 11/23 14/5 16/4 18/24 19/6
**infringing** [3] 7/11 11/4 18/23
**inordinately** [1] 6/7
**insofar** [1] 6/19
**instance** [1] 13/22
**instructed** [2] 8/20 9/11
**insubstantial** [2] 15/17 15/19
**intellectual** [1] 6/24
**intentional** [1] 7/14
**interested** [1] 10/9
**interesting** [2] 20/11 20/17
**internal** [5] 8/6 8/6 8/7 12/17 16/21
**internally** [3] 6/3 7/19 7/22
**Internet** [13] 5/21 6/6 12/12 12/14 12/24 14/20 15/24 16/7 16/16 16/19 16/25 17/6 17/11
**into** [4] 9/5 13/5 14/25 23/8
**introduces** [1] 16/9
**investment** [1] 11/15
**invite** [1] 5/3
**is** [81]
**issue** [10] 5/2 14/6 14/8 15/15 15/17 16/3 16/16 17/1 18/11 20/22
**issues** [1] 6/10
**it** [49]
**it's** [10] 4/20 6/8 7/18 7/20 10/14 13/12 17/1 19/24 20/17 22/2
**Item** [1] 4/4
**items** [1] 16/2
**its** [7] 5/12 5/15 5/16 8/25 9/8 11/22 15/5
**itself** [2] 8/16 10/9

## J

**Jason** [2] 3/3 4/9
**jodie** [3] 2/6 2/9 4/15
**John** [2] 2/17 4/18
**jtehranian** [1] 2/20
**JUDGE** [1] 1/5
**judgment** [3] 4/22 6/1 17/8
**JUNE** [1] 1/17 4/1 23/21
**jury** [1] 23/3
**just** [9] 6/13 8/11 8/18 9/12 14/25 16/15 17/10 19/19 21/17

## K

**Keats** [5] 3/8 3/9 4/11 4/12 4/12
**kind** [5] 9/1 9/18 14/3 15/6 21/9
**kits** [2] 19/25 19/25
**kmwlaw.com** [1] 3/9
**know** [10] 5/24 6/5 6/22 10/3 10/15 18/1 20/10 20/23 22/25 23/7
**known** [1] 11/20

## L

**labeled** [1] 13/7
**lack** [2] 16/1 17/23
**lady's** [1] 14/15
**large** [1] 6/7
**Larry** [2] 3/8 4/10

**Last** [1] 13/20
**latest** [1] 10/15
**laundry** [1] 22/3
**law** [2] 6/2 6/4
**layers** [1] 15/20
**least** [2] 6/18 11/18 12/16
**lectern** [1] 6/15
**legal** [1] 16/3
**less** [3] 11/25 21/5 21/7
**let** [6] 6/13 7/23 13/24 16/2 17/21 18/13
**let's** [4] 7/17 11/18 19/1 23/5
**like** [7] 9/13 12/1 14/2 14/22 15/6 17/15 17/16
**limine** [3] 6/6 15/25 18/19
**limited** [2] 15/8 18/2
**linage** [1] 21/2
**line** [5] 8/11 8/14 8/19 9/10 16/22
**link** [2] 13/1 13/21
**linking** [1] 13/21
**listing** [1] 13/21
**LLP** [3] 2/7 2/12 2/17
**lmcfarland** [1] 3/11
**Lo** [2] 3/3 4/9
**log** [1] 13/3
**logic** [1] 19/8
**long** [1] 11/1
**look** [3] 5/24 15/15 19/13
**looked** [1] 13/21
**looking** [1] 18/18
**LOS** [4] 1/16 1/24 3/5 4/1
**losing** [1] 11/6
**lost** [1] 11/11
**lot** [1] 14/3
**Lowe** [1] 20/11

## M

**MacArthur** [1] 2/18
**Macy's** [23] 5/9 5/15 6/2 6/19 7/17 7/25 8/12 9/1 9/3 9/3 9/5 9/9 10/8 10/8 10/9 13/13 14/22 15/5 16/6 21/4 21/11 22/10 22/19
**made** [3] 7/7 7/12 7/16
**magic** [1] 9/17
**maintain** [1] 5/21
**maintains** [2] 5/18 15/8
**majority** [1] 12/24
**make** [2] 6/14 19/19
**making** [2] 7/7 11/14
**males** [1] 20/12
**manner** [1] 19/10
**manual** [1] 19/4
**many** [2] 6/19 21/13
**Marcellus** [3] 3/3 4/7 13/25
**market** [2] 2/7 17/17
**marketed** [1] 19/24
**markets** [1] 5/12
**materialize** [2] 20/1 22/18
**materials** [4] 8/19 8/22 9/7 9/8
**matter** [4] 9/12 17/2 17/17 23/19
**may** [4] 4/21 10/14 18/15 19/19
**maybe** [3] 18/4 18/4 19/15
**McFarland** [5] 3/8 3/9 4/11 4/11 4/12
**McRae** [3] 3/3 4/8 14/1
**me** [10] 4/25 6/9 6/13 7/23 13/15 13/24 16/2 17/21 18/13 23/9
**mean** [4] 8/2 10/13 15/7 15/16
**meaning** [2] 20/14 21/5
**means** [1] 14/12
**mediums** [1] 10/22
**men** [1] 22/15
**merely** [1] 14/12
**might** [1] 8/12
**million** [5] 10/16 21/18 21/19 21/20 21/22
**millions** [1] 22/11

## M

mind [1] 6/14
minority [2] 10/14 10/15
mmcrae [1] 3/6
moment [1] 17/10
MONDAY [3] 1/17 4/1 23/10
money [2] 11/11 22/3
month [1] 21/7
months [1] 21/6
more [4] 11/25 20/16 22/2 22/4
morning [1] 4/10
most [2] 8/23 12/25
motion [4] 4/22 4/24 6/1 14/24
motions [4] 6/6 6/11 15/25 18/19
movie [1] 20/9
Mr. [1] 16/10
Mr. Hamilton [1] 16/10
much [1] 10/23
multiple [1] 14/14
must [5] 10/16 11/6 11/11 11/12 16/23
my [7] 4/9 13/12 14/25 17/23 18/2 18/15
 21/16

## N

name [18] 5/22 7/19 7/21 7/24 9/11 9/16
 11/21 11/24 12/19 14/7 14/11 14/20 15/14
 19/9 19/16 19/22 20/5 20/14
names [2] 5/25 14/15
naming [1] 15/4
nature [2] 6/10 14/9
needs [1] 6/9
never [2] 5/18 19/22
Newport [1] 2/19
newspaper [1] 10/22
next [3] 4/22 17/3 23/10
night [1] 13/20
Ninth [1] 7/12
no [7] 1/9 7/20 10/2 14/18 17/19 20/20 23/24
Nolan [1] 2/7
None [1] 19/3
noninternal [1] 12/22
North [3] 1/24 2/7 2/13
not [27]
not-so-basic [1] 14/14
nothing [1] 23/8
noticed [1] 6/7
notion [1] 15/23
notwithstanding [1] 15/8
now [6] 5/2 7/17 12/2 13/7 18/2 18/18
number [5] 5/7 6/7 11/15 14/1 15/20
numbers [1] 21/16
nutshell [1] 22/13

## O

OOO [1] 4/2
objections [1] 16/1
obviously [1] 20/12
occur [1] 11/4
occurred [2] 9/23 9/25
Official [1] 23/23
Oh [1] 15/6
okay [2] 13/24 23/10
old [1] 20/9
on [27]
one [18] 2/17 6/24 12/20 12/24 13/12 14/15
 16/19 17/10 17/10 18/21 19/19 20/11 20/12
 20/16 20/24 21/5 21/16 22/18
one percent [1] 21/5
onellp.com [1] 2/20
online [2] 12/23 13/10
only [5] 9/17 10/18 11/8 11/10 14/23
opposed [1] 14/21
optimism [1] 22/17

## P

or [33]
order [4] 8/5 16/25 18/11 22/11
ordinarily [1] 11/4
origin [1] 18/8
other [11] 5/1 5/9 10/2 13/2 17/9 17/12 18/11
 18/21 20/2 20/20 22/17
our [11] 6/25 7/2 7/21 9/4 14/17 15/3 18/22
 18/25 18/25 19/24 22/13
out [1] 16/24
outlined [1] 16/10
outreach [1] 12/17
over [4] 11/1 11/2 21/1 22/8
overview [1] 6/18
own [1] 8/25
owned [2] 9/22 10/1

## P

P.M [1] 4/1
packaging [1] 19/23
parlay [1] 9/16
part [6] 5/14 6/1 7/2 12/12 12/13 18/22
particular [1] 7/16
partner [1] 4/9
parts [1] 5/17
party [8] 8/11 8/12 8/14 15/24 16/7 17/18
 17/20 20/18
Patrick [1] 20/11
Paul [1] 2/13
pay [1] 16/6
peek [1] 18/19
penetration [1] 22/11
people [5] 10/16 10/18 17/16 20/18 20/23
per [3] 7/16 21/7 21/20
percent [1] 21/5
perhaps [3] 4/23 5/2 8/16
period [3] 11/2 21/21 22/8
personally [1] 21/15
persons [1] 9/6
PH [1] 3/9
phenomenon [2] 9/23 9/25
photo [1] 12/20
photos [1] 12/19
Picasso [2] 18/5 18/6
pick [1] 23/9
picture [1] 15/13
pictures [2] 13/16 15/10
PIECES [8] 1/7 4/5 4/14 4/17 4/19 10/10
 10/10 12/25
pivotal [1] 14/8 19/15
place [2] 14/21 20/23
places [1] 5/9
plaintiff [28]
plaintiff's [3] 5/11 5/14 17/11
Plaintiffs [1] 1/8
plans [1] 22/18
platform [1] 8/21
please [2] 4/6 18/16
plow [1] 23/8
point [33] 5/2 9/20 11/11 11/13 11/19 13/9
 13/12 14/20 16/15 16/19 18/5 19/19 19/24
points [3] 14/2 17/20 19/9
population [1] 10/13
position [1] 14/18
positioned [1] 4/21
possibility [1] 20/24
posted [1] 16/24
posting [1] 17/5
potential [1] 12/14
predominantly [1] 11/3
prepared [1] 18/20
present [1] 7/14
PRESIDING [1] 1/5
press [3] 12/16 12/18 19/25

## P

pretrial [3] 1/20 4/20 4/24
preview [1] 5/1
price [2] 12/2 12/6
problem [1] 14/4
proceedings [2] 1/15 23/19
product [2] 9/4 11/8 17/12 17/24
profits [7] 7/4 7/6 7/9 11/14 19/1 21/9 21/24
program [1] 12/17
prominent [1] 11/17
proof [2] 17/18 18/10
property [1] 6/24
proposes [1] 6/8
proposition [1] 11/7
prove [1] 7/15
provides [1] 9/8
public [2] 10/11 22/21
publications [1] 11/17
pulse [1] 14/4
purchaser [1] 8/13
put [3] 16/15 18/5 22/18
puts [1] 8/25

## Q

qualification [1] 6/11
qualities [1] 5/6
question [6] 16/15 17/3 17/9 17/10 17/25
 18/7
questioning [1] 14/9
questions [1] 14/3
quite [2] 11/11 12/13

## R

radio [1] 10/22
raised [1] 6/11
range [1] 12/8
rare [1] 9/22
rate [1] 21/4
real [1] 19/20
really [2] 14/3 16/12
reason [1] 9/24
reasons [1] 15/20
record [3] 18/12 20/21 23/18
reference [3] 16/21 22/7 22/24
references [5] 15/24 16/8 16/16 16/19 17/15
referencing [1] 8/4
referred [3] 5/15 5/16 19/5
regard [1] 10/4
regarding [1] 6/11
regardless [1] 7/15
release [1] 12/18
releases [1] 12/16
relevant [2] 14/5 21/21
relied [1] 12/14
repeat [1] 23/1
Reporter [1] 23/23
REPORTER'S [1] 1/15
representative [2] 10/7 16/11
representatives [4] 8/20 9/1 9/10 15/5
reputation [2] 10/4 15/9
respect [5] 16/2 17/19 19/11 20/5 22/20
result [2] 12/21 12/22
results [1] 12/24
retailer [1] 14/22
retailers [3] 8/11 8/12 8/15
return [1] 11/14
right [5] 11/18 12/10 20/6 21/22 22/4
rob [2] 18/5 20/10
robbed [1] 18/6
Room [1] 1/24
root [1] 20/25
roundabout [1] 11/23
RPR [1] 1/23
rule [1] 18/20

**S**

said [3] 15/1 16/19 23/8
sale [8] 6/25 7/7 7/7 7/12 7/16 9/4 14/20 21/4
sales [19] 6/25 8/20 8/25 9/7 15/9 17/17 18/22 18/22 18/25 18/25 18/25 20/16 21/3 21/22 21/23 21/25 22/5 22/5 22/11
same [2] 5/13 19/7
say [7] 7/24 10/16 18/8 20/20 21/25 22/1 22/23
saying [9] 7/18 7/20 10/17 10/18 13/15 15/2 15/4 15/6 15/16
says [1] 13/23
se [1] 7/16
seated [1] 4/21
secondary [1] 17/17
see [6] 5/22 12/24 13/1 13/16 14/4 15/10
seems [3] 15/16 18/21 18/23
seen [1] 12/16
seepage [1] 16/24
sees [1] 15/13
segue [1] 18/13
sell [6] 5/7 6/19 12/3 14/21 17/16 21/6
selling [1] 13/14
sense [1] 5/1
sent [2] 8/11 8/14
series [1] 8/17
Seven [4] 21/18 21/19 21/20 21/22
Seven million [4] 21/18 21/19 21/20 21/22
several [1] 15/20
sheet [5] 8/5 8/14 8/19 16/22 16/22
sheets [1] 8/11
should [2] 22/20
show [4] 7/6 7/6 18/9 18/24
shows [2] 16/22 17/8
sides [1] 23/9
significant [1] 8/23
similar [2] 5/11 12/8
simple [1] 7/3
site [12] 5/21 5/24 6/5 6/6 12/14 13/1 13/8 13/8 15/12 15/13 16/7 17/11
sites [1] 13/13
situation [3] 7/17 9/2 9/20
skirt [1] 19/6
Slater [2] 2/6 4/16
so [22] 6/2 6/13 6/20 6/22 8/22 9/1 10/3 10/18 11/6 11/10 11/20 11/23 14/13 14/14 15/1 15/13 17/23 19/1 22/4 22/12 22/22 23/5
sold [5] 5/8 5/18 9/17 10/17 11/10
solely [2] 7/19 7/21
some [21] 5/1 5/1 5/6 5/17 6/10 8/5 10/4 12/4 12/14 12/21 14/5 14/7 14/14 15/9 15/24 16/11 16/21 16/24 20/6 20/14 22/7
somebody [2] 17/12 22/20
somehow [1] 6/3
someone [2] 5/23 16/24
something [6] 12/1 16/25 18/11 22/2 22/25 23/7
somewhat [2] 4/21 4/21
sort [13] 4/24 4/25 5/1 6/17 14/5 14/7 14/8 14/24 15/6 19/5 20/14 20/15 20/22
source [2] 14/17 17/24
South [1] 3/4
speak [1] 16/8
speaks [1] 8/24
special [1] 20/14
speculation [1] 17/2
speculative [2] 15/18 15/20
spend [1] 22/11
spent [2] 10/25 11/7
Spring [1] 1/24
St [1] 2/13
stakeholders [1] 20/19

Standly [1] 2/12
standlyhamilton.com [1] 2/15
starring [1] 20/16
start [1] 22/15
starting [2] 6/17 6/23
state [2] 4/6 6/18
stated [1] 19/23
STATES [2] 1/1 1/23
Ste [1] 3/9
steered [1] 14/3
stenographic [1] 23/18
step [1] 7/23
STEPHEN [1] 1/5
still [1] 19/1
store [3] 5/9 9/5 15/15
stores [1] 21/7
Street [3] 1/24 2/7 2/13
Strong [1] 2/7
strongly [1] 21/1
strongnolan.com [1] 2/9
study [1] 21/8
style [1] 14/12
styles [2] 14/14 16/23
subject [1] 16/5
submit [1] 16/5
submitted [1] 14/10
substantial [5] 5/8 9/14 10/14 10/14 11/14
such [3] 19/24 19/25 20/23
sue [1] 22/19
suffers [1] 19/1
suffice [2] 18/8 22/1
sufficient [1] 17/1
Suite [3] 2/7 2/13 2/18
summary [4] 4/22 4/23 6/1 17/8
sure [2] 12/16 12/13
SVW [2] 1/9 4/4
Swayze [1] 20/11
switch [1] 16/14
synthesized [1] 14/17

**T**

take [5] 6/14 7/17 7/23 11/24 14/2
taken [1] 18/19
talisman [2] 16/16
talked [1] 20/1
talking [5] 14/11 14/23 16/4 16/4 17/15
Tehranian [2] 2/17 4/19
term [1] 8/10
terms [5] 7/5 20/16 20/21 22/5 22/17
testified [1] 10/8
testify [1] 16/10
testimony [1] 9/9
than [6] 17/13 18/12 21/5 21/7 22/2 22/4
Thank [3] 18/17 23/11 23/12
that [123]
that we [1] 16/5
that's [11] 7/8 7/22 10/3 14/8 14/10 17/25 18/4 21/7 22/9 23/2 23/4
their [8] 11/14 13/8 20/25 22/13 22/17 22/18 22/20 22/21
them [6] 9/6 12/25 14/2 18/20 21/6 21/16
then [8] 5/3 7/14 9/1 16/24 17/3 17/11 18/23 18/24
theory [13] 6/14 6/22 6/23 6/24 7/1 7/2 7/3 7/9 7/12 11/20 16/19 18/21 18/21
there [24]
there's [8] 5/10 7/3 10/2 13/21 17/6 18/24 20/20 22/6
these [13] 5/7 6/12 9/10 11/8 11/15 16/2 16/7 17/5 17/19 18/19 19/11 21/4 21/10
they [25]
they're [2] 15/16 17/15
they've [2] 22/22 22/23

things [3] 17/15 20/11 20/17
think [7] 5/17 6/8 14/3 14/8 15/3 16/20 22/13
thinking [1] 14/25
third [7] 8/11 8/12 8/14 15/24 16/7 17/20 20/18
third-party [7] 8/11 8/12 8/14 15/24 16/7 17/20 20/18
this [30]
those [6] 9/11 13/10 20/3 20/12 21/15 22/5
thought [1] 6/20
threshold [1] 20/22
through [2] 11/3 22/10
time [12] 1/7 4/4 4/14 4/16 4/19 4/25 7/23 10/9 10/10 12/25 13/7 14/19
together [1] 8/18
Tony [1] 4/12
too [4] 15/17 15/18 15/19 15/19
took [1] 21/6
total [1] 21/20
tout [1] 17/12
Tower [1] 2/18
trace [1] 21/2
traces [1] 18/8
trademark [3] 6/4 8/15 8/17
trained [1] 9/10
training [3] 8/19 8/22 9/7
transcript [2] 1/15 23/18
tremendous [1] 5/7
triable [2] 16/25 18/11
tried [3] 11/23 22/15 22/23
true [2] 7/22 23/17
try [1] 9/16
trying [1] 14/25
turn [1] 9/3
two [2] 12/16 22/15
TX [2] 2/8 2/13
type [6] 6/10 8/5 12/23 13/3 13/5 13/9 13/11 13/16

**U**

U.S [1] 1/5
unclear [1] 6/9
under [3] 6/2 7/8 22/16
understand [4] 5/4 5/14 5/20 6/1
understanding [1] 13/12
unfounded [1] 18/6
unique [2] 9/2 9/20
UNITED [2] 1/1 1/23
up [7] 12/5 14/2 15/9 15/11 15/13 23/6 23/9
upon [3] 10/19 12/14 19/16
URL [1] 13/23
use [10] 4/24 8/10 8/19 8/19 11/21 12/17 12/22 14/6 14/6 14/10
used [9] 6/3 7/18 7/21 7/24 12/18 14/19 19/10 19/11 19/24
using [1] 14/11

**V**

various [2] 9/10 10/22
versus [1] 4/5
very [3] 6/19 9/20 14/3
violate [1] 6/3
visibility [1] 22/12

**W**

wait [1] 23/5
want [3] 6/14 11/21 18/6
wanted [2] 4/24 22/19
warrant [1] 9/18
was [30]
wasn't [2] 8/6 12/13
watch [25]
watches [28]
watchmaker [1] 10/2

# W

water [1]  18/13
way [4]  5/13 15/6 19/5 19/6
we [18]  7/15 9/1 13/21 14/4 14/18 16/5 16/5 17/14 18/9 18/24 18/25 20/5 21/1 21/11 21/11 21/25 22/14 22/15
we'll [1]  23/9
we're [2]  7/20 14/23
we've [1]  12/16
Wear [1]  11/16
wearing [1]  12/20
week [1]  4/23
Well [2]  8/14 8/25
went [3]  5/21 5/23 12/5
were [9]  10/21 10/22 11/14 11/15 11/16 11/17 15/20 21/5 22/12
West [1]  2/18
what [31]
what's [2]  4/25 5/2
whatever [2]  15/7 17/6
whatsoever [2]  17/5 20/21
when [5]  5/14 11/4 16/4 16/18 22/12
where [7]  7/10 9/2 10/6 10/19 11/13 12/18 13/22
whether [6]  7/15 14/6 17/4 18/8 19/9 21/8
which [17]  5/24 8/11 8/18 8/19 9/13 14/22 15/10 15/23 16/3 16/12 16/22 19/5 19/9 20/21 20/24 22/7 22/19
while [2]  12/16 15/1
whisper [1]  15/6
white [1]  20/12
who [8]  10/8 16/10 16/24 17/24 18/6 20/18 20/19 20/23
whole [2]  13/13 18/4
why [6]  6/9 9/12 9/13 9/16 17/12 22/20
will [12]  10/12 11/19 13/1 13/6 13/11 13/11 13/13 13/16 15/10 15/14 15/15 16/14
willful [3]  7/14 18/24 19/1
willfulness [2]  7/13 19/2
Wilshire [1]  3/9
WILSON [3]  1/5 3/9 4/11
within [2]  14/12 20/15
without [1]  15/4
witnesses [1]  9/10
Woman's [1]  11/16
won't [1]  13/9
words [5]  5/1 13/2 18/21 20/2 20/20
work [1]  15/21
worldly [1]  22/17
worn [1]  11/15
would [22]  4/23 5/11 5/22 5/25 6/25 7/7 7/12 7/16 9/12 9/13 9/16 9/18 9/18 10/16 11/22 13/12 14/22 17/1 17/12 18/9 18/22 18/25
wouldn't [1]  18/9
wristwatch [2]  5/6 5/12
wristwatches [4]  5/7 5/8 5/10 5/25
wrongful [1]  7/11
wrote [1]  16/20

# Y

Yahoo [1]  13/6
year [2]  22/8 22/9
yes [15]  6/17 7/5 8/1 8/3 9/15 10/5 11/9 11/25 12/15 13/18 15/22 16/17 19/18 19/21 21/23
you [51]
you'll [1]  12/24
you're [10]  6/15 10/17 10/17 10/18 13/3 13/15 14/11 15/10 16/4 21/8
You've [1]  18/2
YOUNGBLOOD [57]
your [49]